IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SANDRA BUSTILLOS, as mother and next
Friend of J.G., a minor child, BEV NELSON,
as mother and next friend of M.C., a minor
child, BERNADETTE AND JIM BROWN,
as parents and next friends of K.B., a minor child,
DANA SAWYERS-HERRERA, as mother and
Next friend of J.H., a minor child, and for
Similarly situated students of the Albuquerque
Public Schools,**

         **Plaintiffs,**

vs.                                               **No. CV-07-1027 JH/RHS**

**BOARD OF EDUCATION ALBUQUERQUE
PUBLIC SCHOOLS, NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,**

         **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Allow Filing of First Amended Complaint, filed February 4, 2008 [Doc. 21], and Defendant Albuquerque Public School's ("APS's") Motion for Partial Dismissal of Plaintiffs' Damage Claims, filed March 28, 2008 [Doc. 39]. The Court having considered the motions, memoranda, and relevant law, and being otherwise fully informed, finds that Plaintiffs' Motion to Allow Filing of First Amended Complaint is well taken and will be granted and that Defendant APS's Motion for Partial Dismissal of Plaintiffs' Damage Claims is also well taken and will be granted. Plaintiffs must file and serve their amended complaint within ten (10) days of entry of this Order.

## I. BACKGROUND

On October 9, 2007, Plaintiffs' initial Complaint was filed as Exhibit A to APS's Notice of Removal from the Second Judicial District. [Ex. A to Doc. 1.] On February 4, 2008,

Plaintiffs filed their Motion to Allow Filing of First Amended Complaint, attaching their proposed First Amended Complaint as Exhibits 1 and 2.  [Doc. 21.]  While Plaintiffs have represented that Defendant New Mexico Public Education Department ("NMPED") does not oppose the filing of Plaintiffs' First Amended Complaint, [Doc. 32, at 1], Defendant APS *does* oppose such filing. Additionally, on March 28, 2008, Defendant APS filed a Motion for Partial Dismissal of Plaintiff's Damage Claims. [Doc. 39.]  Specifically, Defendant APS seeks dismissal of any damage claims under the IDEA, any derivative claims for money damages by Plaintiff parents, and any lost wages claims.

## II.  DISCUSSION

### A.  Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. P. 15(a).  "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  *Id.*; *Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (noting that whether to grant leave to amend is committed to the district court's discretion).  Generally leave to amend is only refused "on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Duncan*, 397 F.3d at 1315.  In practice, the burden falls on the party opposing the amendment to demonstrate why the amendment should not be allowed.  *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) (Rule 15(a) creates a "strong presumption" in favor of permitting the

amendment).

In their Motion to Allow Filing of First Amended Complaint (hereinafter "Motion to Amend"), Plaintiffs represent that they seek permission to file their amended complaint for the following reasons:

    (a)    to drop one party and add seven parties;
    (b)    to clarify claims made in the original complaint;
    (c)    to update facts concerning original plaintiffs';
    (d)    to reduce ambiguous or nonuniform language for ease of reading and understanding.

More specifically, Plaintiffs seek to drop from their Complaint Sandra Bustillos, as mother and next friend of J.G., and to add the following seven parties: Kim and Jim Domina, as parents and next friends of V.D., Timothy and Diane Kreitinger, as parents and next friends of J.K., Mark Martinez and Regina Stance, as parents and next friends of I.M., Mayline Jaramillo and John Gonzales, as parents and next friends of Z.G., Creela and John Torres, as parents and next friends of M.T., Jim and Melissa Bancuk, as parents and next friends of K.B., and Antoinette Montoya, as grandmother and next friend of B.V.

Defendant APS claims that it is futile for Plaintiffs to join the seven proposed plaintiffs, because none of them have exhausted their administrative remedies. [Doc. 26, at 2.] Plaintiffs, in turn, argue that they are excused from exhausting their administrative remedies because 1) exhaustion would be futile; 2) exhaustion would fail to provide adequate relief; 3) Defendants have adopted a policy or pursued a practice of general applicability that is contrary to the law; and 4) Plaintiffs have alleged the existence of "pure" discrimination. [Doc. 32, at 4-5.]

In the Court's view, Defendant APS's attempt to rebut Plaintiffs' Motion to Amend -- by suggesting that Plaintiffs have improperly failed to exhaust their administrative remedies -- is a

3

line of argument better suited for a motion to dismiss or a motion for summary judgment.  On one hand, the joining of these additional plaintiffs may ultimately prove futile.  On the other hand, Plaintiffs' action may survive a motion to dismiss or a motion for summary judgment on the grounds that exhaustion was excused.  However, the Court is hesitant to resolve the exhaustion dispute at this early stage and on the present record without the benefit of a full briefing by the parties.

Further, while the new plaintiffs may not be necessary parties, there is no reason to multiply this litigation by requiring them to file another nearly identical case.  As such, the Court determines that Plaintiffs have shown good cause for leave to amend their initial Complaint to join seven additional plaintiffs.  The Court declines to resolve disputes about whether or not these additional plaintiffs, or the original plaintiffs for that matter, are excused from exhaustion requirements in the context of Plaintiffs' Motion to Amend.

In addition to adding factual allegations to support the seven new plaintiffs' claims, Plaintiffs have also included additional facts concerning the remaining "original" plaintiffs.  These "updat[ed] facts" primarily consist of events that allegedly occurred after the filing of the initial Complaint on September 7, 2007.  *See, e.g*., [Ex. 1 and 2 to Doc. 21, at ¶ ¶ 79, 80, 82, 83, 84, 88, 89, 90.]  In addition, Plaintiffs have added several general factual allegations, including statistical facts concerning the number of APS students with autism and allegations related to the student attendance policy in the "Student Behavior Handbook." *Id.* at 42, 43, 61, 62.  With regard to these factual amendments, the Court does not detect the presence of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *See Frank v. U.S. West, Inc*., 3

F.3d 1357, 1365-66 (10th Cir. 1993).  Nor do Defendants allege any deficiencies concerning these particular amendments.  Indeed, it appears that Plaintiffs did not have knowledge of the substance of these new factual allegations until relatively recently, or at least sometime after the filing of their initial Complaint. *See* [Ex. 1 and 2  to Doc.  21, at ¶¶ 42, 43, 61, 62, 79, 80, 82, 83, 84, 88, 89, 90.]  The Court concludes that Plaintiffs have shown good cause for leave to amend their Complaint to include these additional factual allegations.

Finally, Plaintiffs seek leave to file their First Amended Complaint to "clarify claims" and to "reduce ambiguous or nonuniform language."  First, the Court can surmise that Plaintiffs have revised their initial Complaint to emphasize that Plaintiffs have allegedly been deprived of not only a *full school year*, made up of a certain number of days, but also *full school days*, made up of a certain number of hours.  *See, e.g.*, [Ex. 1 and 2  to Doc.  21, at ¶¶ 58, 71, 141-46, 150, 153, 155.]  The Court finds such a clarification permissible and in fact helpful.

Next, Plaintiffs have attempted to recharacterize their claim for parental lost wages, replacing any reference to "awards" or "damages" with reference to "reimbursement."  Similarly, Plaintiffs have included an additional question of law and fact common to the class: "whether the IDEA supports an *equitable remedy of lost wages reimbursement* to parents who can prove lost income as a result of APS's failure to provide full school days or a  full school year of education to their children who are autistic."  [Ex. 1 and 2  to Doc.  21, at ¶¶ 33(h) (emphasis added).] Plaintiffs have no doubt made these amendments in an attempt to cast their claim for parental lost wages as something other than for damages.  Although the Court finds these amendments permissible in the context of a motion to amend, they are addressed below in the context of Defendant APS's Motion for Partial Dismissal.  *See infra* Part II.B.

Finally, Plaintiffs have added an allegation that Defendants' denial of access to public education "constitutes district and state policy to exclude autistic students from school attendance and/or constitutes policy sanctioning exclusion of these students from school attendance based on disability." [Ex. 1 and 2 to Doc. 21, at ¶ 166.]  Plaintiffs likely add this allegation in an effort to clarify the basis for their claim that exhaustion of administrative remedies is excused under the circumstances of this case.  Plaintiffs' contention that exhaustion should be excused is not new, *see* [Ex. A to Doc. 1., at ¶ 15-19], and Defendants have not objected to the inclusion of this particular allegation.   As such, the Court concludes that Plaintiffs have shown good cause for leave to amend their Complaint in this manner.

In sum, because the Court cannot, on the record before it, resolve the parties' dispute regarding the exhaustion of administrative remedies, and because the Plaintiffs have otherwise shown good cause for leave to amend their initial Complaint, the Court will grant Plaintiffs' Motion to Amend.

**B.  Motion for Partial Dismissal of Plaintiff's Damage Claims**

In the "Prayer for Relief" portion of their First Amended Complaint, Plaintiffs ask this Court 1) to award damages pursuant to Title II of the ADA, Section 504, and the IDEA, [Ex. 1 to Doc. 21, at 41, ¶ 4]; and 2) to award "reimbursement" of parental lost wages pursuant to the IDEA.  *Id.* at 41, ¶ 5.   Then, in their Response to Defendant APS's Motion for Partial Dismissal, Plaintiffs attempt to clarify their claims, noting that although the "wording is inartful," they seek "damages" only under Section 504 and Title II of the ADA, not under the IDEA.  [Doc. 50, at 2-3.]  Additionally, Plaintiffs have apparently abandoned any parental lost wages claims under Section 504 and Title II, if there ever were any such claims.  *See* [Doc. 50, at 4 (indicating that

"lost wages reimbursement has not been sought under Section 504 or Title II of the ADA").] Thus, what remains are Plaintiff students' damage claims under Section 504 and Title II of the ADA and Plaintiff parents' lost wages claims under the IDEA. Because Defendants have not sought dismissal of Plaintiff students' damage claims under Section 504 and Title II of the ADA, the Court addresses only the IDEA-based parental lost wages claims.

Suggesting that they "mischaractherize[d]" their own claim as "damages' for lost wages under the IDEA, Plaintiffs now assert that they are actually seeking "reimbursement" of lost wages. [Doc. 50, at 4.] In fact, they have amended their initial Complaint to reflect this language shift. [Ex. 1 to Doc. 21, at ¶ 5.]. Defendant APS contends that "lost wages are in fact money damages," [Doc. 57, at 3], and that Plaintiffs have "failed to overcome the established rule that money damages are not available under [the] IDEA." *Id.* at 5. Indeed, it is the prevailing opinion of the circuit courts of appeal that damages are unavailable under the IDEA. *See, e.g., Diaz Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir. 2006); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 485-86 (2d Cir. 2002); *Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 528 (4th Cir. 1998); *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.,* 98 F.3d 989, 991 (7th Cir. 1996); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996); *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1275 (9th Cir. 1999); *Ortega v. Bibb County Sch. Dist.*, 397 F.3d 1321, 1325 (11th Cir. 2005); *see also Smith v. Robinson*, 468 U.S. 992, 1020 n.24 (1984), *superseded by statute as stated in Fontenot v. La. Bd. of Elementary and Secondary Educ.*, 805 F.2d 1222 (5th Cir. 1986) (noting, without expressing an opinion on the matter, that courts generally agree that damages are not available under the Education of the Handicapped Act, IDEA's predecessor).

While the Tenth Circuit has not explicitly decided whether the IDEA permits damages, it has indicated, albeit dictum in a footnote to the Court's opinion, that it "saw no reason to depart from the majority view." *Moseley v. APS*, 483 F.3d 689, 693 n.7 (10th Cir. 2007). This Court has likewise followed the majority rule -- determining that damages are unavailable under the IDEA -- under similar factual allegations. *Los Lunas Public Schs. Bd. of Educ. v. Aragon*, CV 03-299 JCH/LFG, at 3 (D.N.M. Sept. 6, 2007) (granting the defendant's motion for summary judgment on the plaintiffs' IDEA claim to the extent that the plaintiffs sought money damages).[1]

The majority rule is a well-reasoned one. First, under the IDEA the Court may grant relief that is "appropriate" in light of the express purpose of the Act, which is principally to provide handicapped children with "a free appropriate public education." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). Notably, it is *not* within the express purpose of the IDEA to provide compensatory damages to parents or children. *Polera*, 288 F.3d at 486; *see also Charlie F.*, 98 F.3d at 991 (determining that the structure of the IDEA "with its elaborate provision for educational services and payments to those who deliver them -- is inconsistent with monetary awards to children and parents"); *Ortega*, 397 F.3d at 1325 (concluding that the IDEA's purpose is to provide educational services, not compensation for personal injury). Second, the availability of damages under the IDEA would "undercut the IDEAs carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes." *Id.* Finally, as

---

[1] Additionally, Judge Armijo, writing for this Court, has acknowledged that "[d]amages are not an available remedy for violations of IDEA . . ." *Barr-Rhoderick v. APS*, 2006 U.S. Dist. LEXIS 72526, No. CIV 04-0327 MCA/ACT, at *76 (D.N.M. Apr. 13, 2006).

8

discussed below, legislation enacted under the Spending Clause, such as the IDEA, must provide clear notice to the States regarding the type of liability at issue. *See infra* p. 11. The IDEA simply does not provide notice to participating States that violations of the IDEA may expose them to damage awards.

Although Plaintiffs offer no direct legal support for their claim that lost wages "reimbursement" is recoverable under the IDEA even where "damages" are not, they suggest that it is a "logical remedy." [Doc. 50, at 5.] Primarily relying on *Burlington*, 471 U.S. 359 and *Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994 (2007), Plaintiffs claim that United States Supreme Court precedent "paves the way" for recognizing a lost wages remedy for parents under the IDEA. First, in *Burlington*, the Court upheld private school tuition "reimbursement" under the IDEA. *Burlington*, 471 U.S. at 370. More recently, in *Winkelman*, the Court recognized that parents are conferred independent, enforceable rights under the IDEA. *Id.* at 2002. This Supreme Court case law, however, falls short of supporting Plaintiff parents' lost wages claims.

First, Plaintiffs have not established that parental lost wages should be construed as something other than damages. To the contrary, in *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 406-07 (6th Cir. 1991), the Sixth Circuit determined that the IDEA did not afford the plaintiff, a child protected by the IDEA, a right to recover lost wages. *Id.* at 407. The Court reasoned that "an award for lost wages could only be an award of damages" and that the IDEA did not provide a mechanism for recovering damages *Id.* This Court agrees. Further, if a child's lost wages constitute damages which are unavailable under the IDEA, so too do his parent's lost wages. After all, the IDEA "does not differentiate . . . between the rights accorded to children and the rights accorded to parents." *Winkleman*, 127 S. Ct. at 2004.

The Supreme Court, in *Burlington* took pains to emphasize that "reimbursement" for amounts expended on appropriate education are something different from typical "damage" awards. *Burlington*, 471 U.S. at 370. The Court observed that the IDEA itself provides for placement in private schools *at public expense* when appropriate education at public schools is impossible. *Id.* In a pragmatic analysis, the Court concluded that "retroactive reimbursement" may be awarded to parents who take it upon themselves to place their child in private school at their own expense, where such placement was indeed necessary, in lieu of waiting out the "ponderous" administrative and judicial review process under the IDEA. *Id.* The Court noted that, in such a situation recovery of private school tuition is best characterized as "reimbursement," rather than "damages," because it requires the school to "belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it fulfilled its duty under the IDEA. *Id.* The same cannot be said for wages forfeited by parents attempting to address their child's educational needs. The IDEA does not contemplate awarding lost wages to parents in the first instance and, as such, they cannot later be characterized as "retroactive reimbursement" of the variety permitted in *Burlington*.

Second, the discussion of "reimbursement" under the IDEA has been limited to recovery for the expense of educational services and has not extended to noneducational claims such as parental lost wages. *See, e.g., Burlington*, 471 U.S. 359; *Florence County Sch. Dist. Four v. Carte*, 510 U.S. 7, 12-16 (1993). Granted, the Supreme Court, in *Winkleman* did determine that the IDEA, through its provisions for expansive review and extensive parental involvement, grants parents independent, enforceable rights under the Act. *Winkleman*, 127 S. Ct. at 2002. The Court did not, however, come close to recognizing a right to parental "reimbursement" for

lost wages. As counsel for Defendant APS puts it, "[t]he only thing the Court decided in *Winkleman* was that parents are proper plaintiffs under [the] IDEA." [Doc. 57, at 6.]

Plaintiffs note that the *Winkleman* Court relied on "two specified 'cost recovery' mechanisms for parents" under the IDEA. [Doc. 50, at 6.] The IDEAs provision for parents' attorney fees and for the cost of private school enrollment did inform the Court's analysis in *Winkleman*. *Winkleman*, 127 Ct. at 2001. However, it does *not* follow that the Court would interpret the IDEA to allow for parental lost wages. First, unlike with attorney fees and the cost of private school enrollment, there is no basis for awarding lost wages embedded in the text of the IDEA. Second, although *Winkleman* held that parents are conferred the same IDEA rights as their children, the right to recover damages, more specifically lost wages, is simply not conferred to either children or parents under the IDEA.

Finally, another Supreme Court case, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006), provides perhaps even stronger support for a determination that parental lost wages awards are unavailable under the IDEA. There, the Court noted that because the IDEA was enacted pursuant to the Spending Clause, any conditions attached to a State's acceptance of federal funds must be set out unambiguously. *Id.* at 295-96. The Court's inquiry in *Arlington* was whether the IDEA furnished clear notice to the States regarding the type of liability at issue, in that case compensation to parents for expert fees incurred during IDEA proceedings. *Id.* at 296. Relying on the text of the IDEA, the Court concluded that Congress did not intend to make participating States "liable for all expenses incurred by prevailing parents in connection with an IDEA case - for example, travel and lodging expenses or *lost wages* due to time taken off from work." *Id.* at 297 (emphasis added). Because the IDEA failed to provide the

clear notice required under the Spending Clause, the Court determined that it did not authorize an award of expert fees to parents. *Id.* at 297. Nor does the IDEA provide clear notice and authorization for parental lost wages awards.

Simply put, Plaintiffs cannot circumvent the unavailability of damages under the IDEA by substituting what is essentially a synonym for "damages." Nor does the Court's rationale for allowing "retroactive reimbursement" to parents for private school tuition apply to Plaintiff parents' claims for lost wages. Plaintiffs urge the Court to rely on the text of the IDEA; however, relying on the text of the IDEA brings the Court to the conclusion that lost wages, whether characterized as "damages" or some alternative type of award, are not available under the IDEA.

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs Motion to Allow Filing of First Amended Complaint, filed February 4, 2008 [Doc. 21],  is hereby **GRANTED**, and Defendant Albuquerque Public Schools' Motion for Partial Dismissal of Plaintiffs' Damage Claims, filed March 28, 2008 [Doc. 39], is hereby **GRANTED.**

Dated this 23rd day of July 2008.

_____
UNITED STATES DISTRICT JUDGE