IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BEV NELSON, as mother and next friend
of M.C., a minor child, et al.,**

          **Plaintiffs,**

vs.                                                     Civ. No.  07-1027 JH/RHS

**BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS and NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on various motions filed by Defendants Board of Education of Albuquerque Public Schools ("APS") and New Mexico Public Education Department. ("NMPED"). In several of those motions, Defendants move to dismiss Plaintiffs' claims under the IDEA based on Plaintiffs' failure to exhaust administrative remedies.[1] *See* Doc. Nos. 107, 108. APS also moves to dismiss Plaintiffs' claim for injunctive relief based upon the separation of powers doctrine. *See* Doc. No. 108. Finally, Plaintiffs have moved for certification of a class action under Rule 23. Doc No. 114. After considering the motions, the briefs, the law, and the evidence, the Court concludes that Plaintiffs' claims against both APS and NMPED, to the extent they are seeking relief that can be had under the IDEA, should be dismissed for failure to exhaust administrative remedies, and that Plaintiffs' motion to certify a class action should be denied.

---

[1] APS has also filed various motions for summary judgment on Plaintiffs' claims that are based, at least in part, on Plaintiffs' failure to exhaust administrative remedies. *See, e.g.*, Doc. No. 72, 110, 112, and 153. While the Court has considered the parties' legal arguments with respect to exhaustion contained in the motions for summary judgment, it has not considered evidence outside the pleadings and therefore decides the exhaustion issue under Rule 12, not Rule 56. On the other hand, the Court has considered the evidence filed by the parties in connection with the motion to certify a class action.

**BACKGROUND**

In this case Plaintiffs contend that Defendants APS and NMPED have violated their children's rights under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act. The Plaintiffs are all parents of autistic children who attend or have attended Albuquerque Public Schools, and they request class action certification under Rule 23 of the Federal Rules of Civil Procedure. The essence of their complaint is that due to a deliberate and pervasive lack of planning by APS as well as APS's failure to train teachers regarding proper methods of teaching autistic children, their children have been denied the full school days and full school years of free public education that is provided to their children's non-disabled peers. They claim that APS has told them to keep their children at home for days or weeks, sent them home early from school, or provided programming that is so unsafe or inappropriate for the autistic students that the students have refused to attend school. Because of all the foregoing, their children have been denied the full 180 days of public education per year that they are entitled to. For example, Plaintiff Bev Nelson claims that from August to November of 2006, APS told her son, M.C., to stay home rather than come to school because APS was not prepared to offer him education, and that on other days throughout the school year he only received a partial day of education. Plaintiffs claim that this is all due to a deliberate failure within APS to properly train staff to deal with autistic students and to make a coordinated effort to ensure that the proper programs are in place for autistic children throughout the district. However, the parents of Z.G. and the parents of K.B.#2 do not allege that their children have suffered any past harm as a result of APS's actions. Rather, they assert that they have a reasonable fear that APS will not provide their children with the proper services in the future, due to anticipated changes in staffing at their children's schools or past behavior of administrators.

The Plaintiffs request far-reaching remedies against APS and NMPED: in addition to damages[2], they petition the Court for "immediate injunctive relief by appointing a special master" who will perform an independent audit of APS school attendance records for students with autism for the 2006-2007 and 2007-2008 school years, calculate hours of compensatory education to be awarded to each class member, audit APS's provision of education to students with autism, and devise, in consultation with "national autism experts," a concrete plan for intensive training of APS staff and formation of proper autism programming.  Plaintiffs want the special master to have similarly broad reach over the NMPED, including developing formal recommendations for revised licensure and staffing standards for educators working with autistic students and assisting NMPED in adopting "mandatory best practice guidelines across the state."

It is undisputed that none of the Plaintiffs have exhausted their IDEA administrative remedies against Defendants prior to filing this lawsuit.  Rather, Plaintiffs argue that they are excused from the exhaustion requirement because exhaustion would be futile.

## DISCUSSION

### I.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

As a general matter, the IDEA requires the exhaustion of administrative remedies.  "As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the [IDEA's] administrative framework to resolve any conflicts they had with the school's educational services." *Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064 (10th Cir. 2002).  Requiring administrative

---

[2] Plaintiffs abandoned their claims for parental lost wages under Section 504 of the Rehabilitation Act and Title II of the ADA, and on July 23, 2008 this Court dismissed Plaintiffs' claims for parental lost wages under the IDEA.  Thus, the Plaintiffs' only remaining damages claims are for discrimination under Title II and Section 504.

exhaustion of IDEA claims advances several objectives:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Ass'n for Community Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993) (internal quotation marks omitted). The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes, including Section 504 of the Rehabilitation Act and the ADA, when relief is also available under the IDEA. *Cudjoe*, 297 F.3d at 1063 ("We believe that both the language and the policy of the IDEA suggest that if a student with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking his not available under the IDEA.").

The administrative process is straightforward. Section 1415 of the IDEA grants the right to present to the school district a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a child with a disability], or the provision of a free appropriate public education [FAPE] to such child." § 1415(b)(6)(A). In conjunction with the complaint the parents must provide the district with a notice that includes "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem" and "a proposed resolution of the problem to the extent known and available to the parents at the time." 20 U.S.C. §1415(b)(7)(A)(ii)(III), (IV). The complaint, if not settled through mediation, *see* § 1415(e), or a preliminary meeting, *see* § 1415(f)(1)(B)(i), is resolved through an impartial due-process hearing, *see* § 1415(f)(1). At the hearing the parties have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses."

§ 1415(h)(2). The hearing officer must prepare findings of fact and a decision. *See* § 1415(h)(4). Either party may appeal the hearing officer's decision to the state educational agency, which reviews the findings and decision and "make[s] an independent decision upon completion of such review." § 1415(g). Only after the state agency has issued its decision may a party bring "a civil action with respect to the complaint" in state or federal court. § 1415(i)(2)(A); *see id.* § (i)(1)(B); *id.* § (i)(3)(A) (jurisdiction of federal courts).

As noted above, it is undisputed that none of the Plaintiffs in this case exhausted their administrative remedies. However, they contend that they were not required to exhaust because they allege a systemic problem at APS which the administrative hearing process cannot remedy, and therefore exhaustion would be futile.

    **A.**    **Exhaustion As Against APS**

In *Ass'n for Community Living v. Romer,* the Tenth Circuit expressly stated that "[e]xhaustion is not required ... where it would be futile or fail to provide adequate relief." 992 F.2d at 1044. In that case the plaintiffs, suing under the IDEA and 42 U.S.C. § 1983, claimed that the state department of education had denied them individualized education plans ("IEPs") because its policies arbitrarily predetermined the duration of extended-school-day and extended school year ('ESY") services and used a single criterion to determine eligibility for ESY services. *Id.* at 1043. The Tenth Circuit held that exhaustion for these claims was not excused under the futility or inadequate-relief exceptions. The court acknowledged that "[a]dministrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Id.* at 1044. However, the *Romer* court declared that the claims before it did "not target structural or due process concerns, but rather the effect of a single component of the state education department's educational program on individual children's IEPs. *Id.* "This is not," the court said,

"the kind of systemic violation that renders the exhaustion requirement inadequate or futile. . . ." *Id*. Determining whether the state's policies "have denied children with disabilities appropriately individualized IEPs," is a "factually intensive inquiry into the circumstances of each individual child's case" and "is precisely the kind of issue the IDEA's administrative process was designed to address." *Id.*

*Romer* also stated in dictum that there may be an exception to the exhaustion requirement when " 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law.'" *Id*. (quoting H.R.Rep. No. 99-296, at 7 (1985)); *see Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996). The Court explained that exhaustion may not be required in that circumstance if a plaintiff's challenge to a policy of general applicability "raise[s] only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." *Romer*, 992 F.2d at 1044. By the same token, however, exhaustion is still required unless "the underlying purposes of exhaustion would not be served." *Id*.

The Tenth Circuit discussed IDEA exhaustion twice recently. First, in *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262 (10th Cir. 2007), parents sued New Mexico Military Institute ("NMMI") over its denial of admission to their daughter. The parents argued that NMMI's failure to offer education services to disabled children, including their daughter, caused its denial of her application, and that NMMI was required to provide her with a FAPE because she is entitled to an education in the least restrictive environment, which is NMMI. However, the plaintiff had not exhausted her administrative remedies. The Tenth Circuit stated, the "dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Id*. at 1276 (quoting *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City and Count of Denver*, 233 F.3d 1268, 1274 (10th Cir. 2000)). As the *Ellenberg* court

went on to state, "We do not determine the availability of the relief based on the immediate ability of a plaintiff to attain it, recognizing that "a child may have to go through several procedural steps to take advantage of that remedy. If the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required...." *Id.* (internal citations and quotations omitted). The Court concluded that before filing suit, the plaintiffs should have requested a new IEP for their daughter and, if they were unhappy with it, pursued administrative remedies. With regard to the Plaintiffs' allegations of the existence of a policy of general applicability contrary to law, the court stated:

> Nor are we persuaded that their claims fall within the general applicability exception simply because they purport to challenge NMMI's policies rather than a specific IEP prepared for S.E. Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms. However, in pursuing these claims plaintiffs must show that the policies are contrary to the law and that the underlying purposes of exhaustion would not be served by requiring procedural compliance. Plaintiffs advance a plausible argument that NMMI's refusal to provide special education services to any student per se infringes upon a child's right to an education in the LRE. However, as noted above, without an IEP we do not know if NMMI was S.E.'s least restrictive environment and thus cannot determine whether her rights under the IDEA were violated. Requiring plaintiffs to first pursue administrative procedures and remedies is fully consistent with purposes of exhaustion.

*Ellenberg*, 478 F.3d at 1277 (internal citations omitted).

Then, a few months later in *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868 (10th Cir. 2007), the autistic plaintiff, through his parents, claimed that the School District's policy limiting ESY services (provided during the summer) to maintenance of previously learned skills violates the IDEA because such services must be designed to meet the unique need of autistic children for continual development of new skills. Again, the Plaintiff did not complete the administrative process. Relying on *Romer*, the Tenth Circuit found that the Plaintiff was not entitled to the benefit of the futility exception:

> Central to the allegations of the plaintiffs in both *Romer* and this case is the question

>of the extent of ESY services. As in *Romer*, Joshua's allegations focus on the "effect of a single component of CDE's education program on individual children's IEPs." *Id*. The overriding consideration is whether it is clear at the outset that the administrative procedure under the IDEA could not provide Joshua with the FAPE to which he is entitled.  Only then could we say that pursuing administrative remedies would be futile or lead to inadequate relief.  Because we have no factual record on Joshua's specific condition or needs, we can hardly say that the District would inevitably deny the FAPE that it should provide him. Accordingly, neither the futility exception nor the inadequate-relief exception to the exhaustion requirement excuses the failure to exhaust administrative remedies for Joshua.

*Id*. at 875.

In this case, Plaintiffs argue that their amended complaint asserts a systemic problem that a hearing officer would have no authority to remedy.  Plaintiffs argue that APS's lack of training and preparation for the education of autistic students exists district-wide to adversely affect all students afflicted with autism. They argue that while each of the plaintiffs could file an administrative complaint every school year in which their children are deprived of a full year of education and potentially could receive compensatory education for that specific year, in theory they each would have to repeat the process year after year because the underlying structural problem at APS would never be fixed.  Thus, they contend that exhaustion is futile.

Based on *Romer*, *Ellenberg*, and *McQueen*, the Court disagrees with Plaintiffs.  It appears that the Tenth Circuit reads the futility exception to the exhaustion requirement for structural or systemic issues quite narrowly.  Under *Romer*, Plaintiffs must demonstrate that APS has "a policy or pursued a practice of general applicability that is contrary to the law."  In such a case, exhaustion is not necessary where agency expertise and development of the factual record are unnecessary. That is not the case here.  According to Plaintiffs own complaint as well as the evidence submitted by the parties, APS has no single policy or practice applicable to all Plaintiffs.  Some students contend that they have been forced to miss school due to inadequate programming, while others

contend that they missed instruction because of lack of adult assistance (for example, an escort from the bus to the school) or peer harassment. Still others contend that they have missed no school at APS due to any improper cause, but fear that they will have problems in the future. These assorted allegations reflect no single policy or practice of general applicability at APS, but rather demand the development of a detailed factual record regarding each individual student's particular situation–exactly the type of remedy that the administrative system is geared to provide. Indeed, Plaintiffs' own prayer for relief confirms that Plaintiffs' claims are unique and particularized. In essence, Plaintiffs ask the Court appoint a special master to act as an overarching administrative law judge who will gather facts regarding each individual Plaintiff and determine a remedy, including compensatory education, for each Plaintiff. In light of that fact, the Court cannot conclude that the underlying purposes of exhaustion would not be achieved, as required under *Romer*. As the Tenth Circuit cautioned in *Ellenberg* and *McQueen*, the dispositive question is whether or not the Plaintiffs' injuries could be redressed to any degree by the IDEA's administrative procedures and remedies. In this case, the Court cannot conclude that those procedures and remedies are incapable of redressing Plaintiffs' claims against the local educational agency ("LEA"), APS. Therefore, the motion to dismiss will be granted.

  **B. Exhaustion As Against NMPED**

  NMPED is a state educational agency ("SEA") under the IDEA. The statute sets forth an SEA's duties, in pertinent part, as follows:

> (11) State educational agency responsible for general supervision
>  (A) In general
>   The State educational agency is responsible for ensuring that--
>    (i) the requirements of this subchapter are met;
>    (ii) all educational programs for children with disabilities in
>    the State, including all such programs administered by any
>    other State agency or local agency--

>  (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
>  (II) meet the educational standards of the State educational agency;

20 U.S.C. § 1412(a)(11). Thus, SEAs such as NMPED have oversight responsibility over LEAs such as APS to ensure that the requirements of the IDEA are met. For their claims against NMPED, plaintiffs contend that NMPED is well aware of APS's policy and practice of failing to provide for full school days and a full school year of public education to its students with autism. They further allege that by failing to intervene to correct APS's systemic discrimination against autistic students, NMPED actively supports APS's discriminatory policies. They claim that NMPED is aware of APS's repeated practice of writing IEPs for autistic students with reduced hours of attendance based on the inability of APS staff to provide education or programming.

Here, it is undisputed that NMPED's regulations setting forth the administrative complaint procedures under the IDEA expressly prohibit hearing officers from considering claims against NMPED, including claims that NMPED "has failed to adequately perform its duty of general supervision over educational programs for children with disabilities in New Mexico," NMAC 6.31.2.13(I)(3)(d), such as Plaintiffs advance in this case. Thus, the Court agrees with Plaintiffs that it is procedurally impossible for Plaintiffs to administratively exhaust their claims of improper supervision against NMPED directly prior to filing their IDEA lawsuit in federal district court.[3]

---

[3] In addition to, and distinct from, the IDEA's due process requirements for ensuring parental involvement in FAPE educational decisions, regulations promulgated by the United States Department of Education "provide an administrative mechanism for ensuring state and local compliance with federally funded education programs, including the IDEA." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). These regulations, originally part of the Education Division General Administrative Regulations ("EDGAR"), require states to adopt a complaint resolution procedure for claims that a state or local agency is violating the IDEA. Both NMPED and its regulation seem to assert that a parent with such a claim must

No mechanism for such an administrative proceeding exists, and therefore such direct exhaustion of claims against NMPED would be futile.

However, the Court agrees with NMPED that until Plaintiffs exhaust their administrative remedies under the IDEA with regard to their claims against APS, their claims against NMPED are premature. Among the goals of the exhaustion requirement are allowing the full development of technical issues and a factual record prior to court review and avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error. Those goals will be frustrated if the Court were to adjudicate the claims against NMPED while the claims against APS were still under administrative review. That is because there can be no determination that an SEA has failed to ensure compliance with the IDEA until there is a determination that the LEA has violated the IDEA. It makes little sense to go forward with claims against NMPED for improper supervision until the Plaintiffs' claims against APS are ripe for review by the court. Thus, the Court concludes that until they have exhausted their administrative remedies against APS, Plaintiffs' claims against NMPED should be dismissed.[4]

## II.     CERTIFICATION OF A CLASS ACTION

Federal Rule of Civil Procedure 23 governs class certification. "Rule 23(a) requires an analysis of four elements which are preconditions to class certification: numerosity, commonality,

---

utilize the state's own EDGAR procedure. However, as both Plaintiffs and NMPED recognize, the Tenth Circuit has held that going through the EDGAR complaint procedures does not fulfill the IDEA's exhaustion requirements. *Romer*, 992 F.2d at 1045 ("the EDGAR procedures are different in both purpose and scope from those in the IDEA and do not provide parents who file complaints with the same opportunities for a full administrative hearing and judicial review.").

[4] Plaintiffs' pure discrimination claims against APS and NMPED under Section 504 and the ADA still remain. APS has filed a motion for summary judgment on those claims which was not fully briefed until December 8, 2008.

typicality, and adequacy of the named parties to represent the class." *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004). "A party seeking class certification must show 'under a strict burden of proof' that all four requirements are clearly met." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)). If all four requirements are satisfied, "[t]he court must then look to the category of class action under Rule 23(b) for additional prerequisites involving certification of a class." *Shook*, 386 F.3d at 968.

In this case, Plaintiffs ask the Court to certify a class defined as school aged autistic persons living within the boundaries of APS who were eligible to attend APS during the 2006-2007 and/or 2007-2008 school years "who have not been provided *and/or are at risk for not receiving* the full school days and full school year of schooling provided by APS . . ." Doc. No. 114 at pp. 4-5 (emphasis added).

### A.  Imprecision of Class Definition

The Court agrees with the Defendants that the plaintiffs' proposed class definition is impermissibly vague and overbroad. It is widely accepted that a class definition should be precise, objective, and presently ascertainable. Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005); *see* Fed. R. Civ. P. 23(c)(1)(B). However, that is not the case here because under Plaintiffs' definition, class members would be impossible to identify prior to individualized fact-finding and litigation.

The determination of who are individuals "at risk" of not receiving a full time education is particularly vague and cannot be made by application of objective criteria. Rather, it would require the parties and the Court to speculate as to future events at APS and to predict where services to autistic students might fall short in the future. Thus, under the Plaintiffs' definition this court is persuaded that neither it nor the parties could readily determine whether an individual is a putative

class member without conducting a highly-individualized inquiry regarding the criteria for class membership identified by Plaintiffs.

Next, Plaintiffs' proposed class definition does not distinguish between students who may have suffered a deprivation of their rights and those who may have been absent from school for other reasons. In other words, Plaintiffs have not established how many of the 350 autistic students at APS have suffered absences from school because of improper programming, as opposed to illness, medical appointments, family travel, disciplinary suspension, or a death in the family. These are just a few of the myriad examples of reasons an autistic student may not have attended APS for full school days for an entire school year, and yet the Court would not be able to make a determination as to whether that student was a member of the class without engaging in a fact-specific inquiry regarding the reasons for his or her absence. Further, some parents of autistic students may have agreed to an individualized education plan for their child that, due to that child's particular needs, included a shorted school day. In defining the proposed class, Plaintiffs assume that school attendance for 6.5 hours per day, 180 days per year, is a fundamental requirement of a FAPE for every autistic child at APS. That assumption ignores the fact that disabled children have unique challenges and that an IEP should be designed to meet the needs of the individual child. Again, the breadth of Plaintiffs' class definition would require the Court to undertake a factual investigation of each child's circumstances to determine whether such a child was a valid member of the class.

Finally, Plaintiffs fail to define how much school a child must miss in order to suffer a compensable injury—one minute, one hour, one day, one week? Plaintiffs have not set forth workable parameters to guide the Court in determining how much instruction time a child must miss in order to be denied full school days and a full school year. In short, the Plaintiffs have not provided the Court with objective criteria in order to be able to efficiently determine who is a

member of the proposed class. Instead, Plaintiffs' approach would require the Court to conduct a factual investigation for each prospective class member to determine if that individual missed school due to inappropriate programming by APS or due to some other cause, how much school was missed, and whether those circumstances rise to the level of denial of a FAPE.

### B. Numerosity

In addition, the Court finds that Plaintiffs have failed to meet their burden to show that the number of class members is so numerous that the joinder of the parties separately is impracticable. As discussed above, the Plaintiffs have proposed an impermissibly broad and vague class definition by including all autistic students within APS, which Plaintiffs estimate at more than 350 individuals. They do this by arguing that every autistic APS student is "at risk" of losing full school days and school years of education due to improper planning and programming by APS. However, Plaintiffs' own complaint acknowledges that at least two class representatives, Z.G. and K.B., have suffered no harm during the 2006-2007 or 2007-2008 school years. Plaintiffs make no effort to demonstrate how many autistic APS students have already suffered actual harm, leaving the court to guess at that number.

Further, Plaintiffs' inclusion of students who are "at risk" of being denied educational services is untenable. It is undisputed that a plaintiff must have standing in order to sue. Standing is part of Article III's "case or controversy" requirement. An individual plaintiff must meet three elements to establish standing: (1) injury in fact, (2) causation, and (3) redressibility. *Davis v. Fed. Election Comm'n*, --- U.S. ----, 128 S.Ct. 2759, 2768, 171 L.Ed.2d 737 (2008). A plaintiff must have suffered "an injury in fact," defined as the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal

quotation marks and citations omitted). A plaintiff must also show a "causal connection between the injury and the conduct." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. And finally, a plaintiff must demonstrate that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S.Ct. 2130 (internal quotation marks and citations omitted). As proposed by Plaintiffs, the current class definition requires the inclusion of students who have not yet suffered injury and for whom future injury is merely speculative.

While Plaintiffs need not demonstrate a specific number of class members, they must at least give the Court a general idea of the numbers involved so that it may evaluate whether they are so numerous that the joinder of the parties separately is impracticable. Having failed to do so, Plaintiffs have not satisfied this prong of the test.

### C. Commonality

The requirement of "commonality requires only a single issue common to the class. Thus, the commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. Further, that the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *J.B. v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999) (internal citations and quotations omitted). In this case, there are no factual issues common to all the plaintiffs. Though all of the plaintiffs fall along the autism spectrum, the severity of their disabilities varies widely. J.H. is a gifted student in mathematics whose absences allegedly stem from either stress due to harassment by his peers, or from an improper disciplinary action against him by APS staff. He has been identified as emotionally disturbed and takes medications to stabilize his mood and behavior. In contrast, K.B. (child of Plaintiffs Jim and Melissa Bancuk) is both autistic and mentally retarded, and she is non-verbal. Though she is in ninth grade, it is unclear whether K.B. is able to perform such basic skills

such as identify letters or count. Plaintiffs allege that she has not missed any school during the 2006-2007 or 2007-2008 school years due to improper programming, nor have her parents been called to assist at the school during that period of time. A review of the evidence regarding the other children demonstrates similar disparities. Some have relatively low cognitive abilities, while others are high functioning. Some have emotional problems and behavior issues, others have no challenges in that area. Some have missed school so that APS staff could receive training on how to support and educate them (e.g., M.C. and K.B., child of Plaintiffs Bernadette and Jim Brown), while others have been away from school because of experienced peer conflicts, disciplinary problems, or inadequate programming. Others have not missed school at all.

As to a common question of law, Plaintiffs have identified none. "For a common question of law to exist, the putative class must share a discrete legal question of some kind." *J.B.*, 186 F.3d at 1289. Here, Plaintiffs claim that Defendants violated their rights in various ways, but that each violation stems generally from APS failure to adequately train and support teachers to educate children with autism. There is no consistent or concrete policy by APS to which Plaintiffs assign blame.

Due to the foregoing analysis, the Court concludes that the class action certification under Rule 23(a) is not warranted, and the Court need not reach the issues of typicality and adequacy of representation.

### III.    PLAINTIFFS' MOTION FOR ORAL ARGUMENT

Plaintiffs have filed a motion requesting oral argument on the issues of exhaustion of administrative remedies and class certification addressed in this Memorandum Opinion and Order. Plaintiffs do not seek to advance new arguments at the hearing; rather, they seek to "ensure" that their position is "fully understood" by the Court. Having carefully reviewed Plaintiffs' briefs,

16

however, the Court is confident that it has fully understood their arguments. Accordingly, the motion for oral argument will be denied.

In light of the foregoing,

**IT IS THEREFORE ORDERED** that:

(1) Defendants' motions to dismiss for failure to exhaust [Doc. Nos. 107 and 108] are **GRANTED**, and Plaintiffs claims against both APS and NMPED are **DISMISSED** to the extent Plaintiffs are asking for relief that may be had under the IDEA;

(2) Plaintiffs' Motion for Class Certification [Doc. No. 114] is **DENIED**; and

(3) Plaintiffs' Motion for Oral Argument [Doc. No. 182] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**