IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BEV NELSON, as mother and next friend
of M.C., a minor child, et al.,**

          **Plaintiffs,**

vs.                                                                  Civ. No.  07-1027 JH/RHS

**BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS and NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case, which involves alleged discrimination against autistic students by a public school district, is before the Court on four motions. Defendant Albuquerque Public Schools ("APS") has filed two separate motions for summary judgment on Plaintiffs' discrimination claims [Doc. Nos. 151 and 153]. APS has also filed a motion to strike portions of affidavits in support of Plaintiffs' motion for class certification [Doc. No. 121]. Because the Court has already denied the motion for class certification, APS' motion to strike is now moot and will be denied on that basis. Finally, Plaintiffs have filed a motion to strike exhibits filed by APS in support of one of its pending motions for summary judgment. [Doc. No. 159].

## LEGAL STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## **PROCEDURAL AND FACTUAL BACKGROUND**

The Plaintiffs are parents of autistic children who attend or have attended Albuquerque Public Schools. The essence of their complaint is that due to a deliberate and pervasive lack of planning by APS as well as APS's failure to train teachers regarding proper methods of teaching autistic children, their children have been denied the full school days and full school years of free

public education that is provided to their children's non-disabled peers. They claim that APS has told them to keep their children at home for days or weeks, sent them home early from school, or provided programming that is so unsafe or inappropriate for the autistic students that the students have refused to attend school. Because of all the foregoing, Plaintiffs allege that their children have been denied the full 180 days of public education per year to which they are entitled.

Plaintiffs have asserted three claims in this case. First, they claimed that their children were denied a free appropriate public education in violation of the Individuals With Disabilities Act ("IDEA"). All Plaintiffs have admitted that they did not exhaust their administrative remedies under the IDEA before filing this lawsuit, but argued that such exhaustion would be futile in light of their allegation of systemic problems at APS. In a Memorandum Opinion and Order entered on January 7, 2009 [Doc. No. 185], the Court found that argument to be without merit and granted summary judgment on all Plaintiffs' IDEA claims for failure to exhaust administrative remedies. For their second and third legal claims, Plaintiffs assert that APS has unlawfully discriminated against their children in violation of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act.

Defendants have filed two motions for summary judgment regarding Plaintiffs' discrimination claims under the ADA and the Rehabilitation Act. The first, Doc. No. 151, addresses all Plaintiffs claims generally as members of the group of autistic students at APS. The second, Doc. No. 153, which pertains only to the Plaintiffs added in the first amended complaint, addresses the specific circumstances of each individual student's education at APS and the discrimination claims in that context.

## DISCUSSION

I.     **APS' MOTION FOR SUMMARY JUDGMENT ON ALL PLAINTIFFS'**

**DISCRIMINATION CLAIMS [Doc. No. 151]**

Plaintiffs contend that they are entitled to damages stemming from APS' discrimination against their children on the basis of their disability, autism. Plaintiffs claim that their children "have been or are at risk of being denied the full school year of public school attendance and instruction provided by APS to their nondisabled peers." Doc. No. 98 at ¶ 1; *see also* ¶ 142. According to Plaintiffs, this across-the-board denial of access to education by APS stems from (1) "the official policy and custom of APS to deliberately fail to plan for timely and continuous, uninterrupted provision of education" to autistic students; and (2) APS' "ongoing failure to train and support the employees providing education to students with autism." *Id.* Plaintiffs allege that APS' failures in this regard are deliberate. *See, e.g., id.* at ¶¶ 1, 141, 149.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Regulations promulgated under the ADA forbid public entities such as APS from denying a disabled person "the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities." 28 C.F.R. § 35.130(b)(2). The regulations also require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "Title II of the ADA adopts the substantive standards of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. . . . The regulations promulgated under section 504 generally conform to the standards established by the IDEA . . ." *Urban v. Jefferson County Sch.*

4

*Dist.*, 89 F.3d 720, 727-28 (10th Cir. 1996) (internal citations omitted).

### A.    Lack of Evidence of Discrimination Against Autistic Children As Compared to Non-Disabled Children

According to their own response brief, "Plaintiffs' claims are that the absence patterns of children with autism show a repeated inability to access a full school day, week and year." Doc. No. 161 at 2. They further claim that "defendants hide, disguise, and cover up the nonattendance patterns of children with autism, to make these children invisible, thereby eliminating any accountability for the decreased access to education." *Id*. at 3. Paradoxically, Plaintiffs also contend that their argument "is *not* that students with autism miss more school than regular education students. Plaintiffs' argument is that regular, uninterrupted school attendance is not available for students with autism in the APS . . ." *Id*. at 4 (emphasis in original). Plaintiffs apparently contend that APS fails to provide access to a full time education to other groups of students as well. Thus, even though Plaintiffs assert a claim that they are being discriminated against because of their disability, they deny that the attendance of autistic students should be compared to that of non-disabled students. *Id*. at 6.

In response, APS has come forward with evidence regarding school attendance by autistic children as compared to non-disabled children for the 2007-2008 school year. *See* Kendall Aff., Ex. A to Doc. No. 151. That evidence shows that for that school year, elementary school students with autism had an average of 1.08 half-day absences and 8.02 full-day absences per student as compared to 1.00 half-day absences and 7.30 full-day absences for their regular education counterparts. *Id*. In the same time period, middle school students with autism had an average of 3.08 half-day absences and 4.93 full-day absences as compared to 3.65 half-day absences and 5.65 full-day absences for their regular education counterparts. *Id*. Finally, with regard to high school students

in the 2007-2008 school year, the autistic students had an average of 2.83 half-day absences and 3.51 full-day absences as compared to 6.05 half-day absences and 4.34 full-day absences for regular education students. *Id*. Thus, in elementary school autistic students demonstrate a slightly higher absence rate than their non-disabled counterparts, though the reverse is true in middle school and high school. The evidence in the record demonstrates that as a whole throughout APS, students with autism average fewer half- and full-day absences, whether excused or unexcused, than their regular education counterparts. *Id*.

Plaintiffs come forward with no evidence to create a fact dispute on this issue; that is, they have not provided the Court with any evidence that autistic students miss more school than regular education students due to discrimination by APS. Instead, Plaintiffs argue that they need not make this showing. Plaintiffs are mistaken. As discussed above, the essence of a discrimination claim under the ADA and the Rehabilitation Act is a denial of benefits or exclusion from participation available to others solely by reason of disability—that non-disabled students receive services and benefits that are denied to autistic students. Black's Law Dictionary defines "discrimination" as "differential treatment; esp., a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." Garner, Black's Law Dictionary at 479 (7th ed. 1999). Here, Plaintiffs have failed to demonstrate that they were denied attendance at school as compared with their non-disabled counterparts. That failure is fatal to their discrimination claims against APS. If, as Plaintiffs allege, non-disabled students are also being denied full-time school attendance, then APS is not discriminating against autistic students on the basis of their disability.[1]

---

[1] The Court recognizes that in certain individual circumstances, such as where APS may have instructed a particular autistic student to stay home because APS had no programming for that student, and such absence from school is not part of a properly formulated individual education plan, it may be possible to tie an autistic student's lack of school attendance to

Nor do Plaintiffs successfully challenge evidence of student attendance offered by APS. Plaintiffs contend that APS has admitted that it lacks accurate attendance records for the school years in question, citing APS's answers to interrogatories. However, Plaintiffs' argument seriously misconstrues APS's answers, which state that it began its conversion to the current computer-based attendance tracking program, SchoolMax, at the beginning of the 2006-2007 school year, with most schools able to use the system before the end of the fall 2006 semester. Nothing in APS' answer supports the inference that APS does not have accurate attendance records for the 2007-2008 school year.

Because Plaintiffs have failed to meet their burden to come forward with evidence to create a genuine fact issue on whether APS denies autistic students a benefit–full time education–that is available to non-disabled students, APS's motion for summary judgment will be granted.

**B.      Lack of Evidence That A Lack of Teacher Training or District-Wide Planning Causes Higher Absences for Autistic Students As a Group**

APS has asserted that Plaintiffs cannot come forward with evidence of a district-wide policy, procedure, or practice within APS to exclude autistic children in general from school, to refuse to train teachers in proper techniques for educating autistic students generally, or to fail to provide proper programming for autistic children as a whole. In response, Plaintiffs contend that they "do not rely on proof of the causal connection between APS's lack of infrastructure/trained staff and the school attendance patterns of student [sic] with autism to establish liability for APS's discrimination. Liability is established by proof of the attendance lapses, the cycle of intermittent school exclusion,

---

discrimination by APS. However, the present motion deals with autistic students generally and APS's alleged failure to provide adequate educational programming for them as a group. The Court leaves the question of whether a specific student suffered improper discrimination to its examination of APS' motion for summary judgment on the claims of the newly added plaintiffs, Doc. No. 153.

7

and APS's lack of interest or concern in students with autism missing so much school." Doc. No. 161 at 21. Thus, Plaintiffs essentially concede that they cannot prove the heart of their claim, that is, that APS discriminates against autistic students, as a group, by failing to train staff or to provide a proper educational infrastructure for autistic children. For this additional reason, APS' motion for summary judgment will be granted.[2]

## II.  APS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF NEW PLAINTIFFS ADDED IN THE FIRST AMENDED COMPLAINT [Doc. No. 153] AND PLAINTIFFS' MOTION TO STRIKE [Doc. No. 159]

In support of its Motion for Summary Judgment on the Claims of New Plaintiffs Added In the First Amended Complaint, APS attached portions of depositions of various plaintiffs. However, in so doing APS declined to photocopy relevant pages from the court reporter's transcripts of the depositions. Instead, APS modified the electronic version of each transcript by copying relevant passages and, using word processing software, pasting them into a new document. In some cases, APS copied the deponent's answer without including the question that prompted the response. Plaintiff has objected on the grounds that the exhibits are not "depositions," but rather attorney-created documents that take statements out of context or provide answers without the corresponding questions. Plaintiffs complain that the excerpts could be misleading, though they acknowledge that they did not purchase the deposition transcripts and so they have no way to verify or challenge the accuracy of the excerpts. They also challenge the excerpts under Rules 32(c) and 56(e)(1). In

---

[2] Again, the Court recognizes that it may be possible for an individual plaintiff to demonstrate that his child was denied school attendance due to a discriminatory failure by APS to train that child's educator(s) or provide the proper programming. The Court believes that the parties have addressed that issue in their briefing of APS's remaining motion for summary judgment, Doc. No. 153. However, the present motion deals with alleged discrimination against autistic students as a group.

response, APS stands by the accuracy of its excerpts and argues that the cited Rules do not prohibit the manner in which it has offered deposition testimony.  APS also contends that it is "common practice" for APS to offer deposition exhibits in federal court in this same fashion.

The Court finds the altered, edited deposition transcripts offered by APS to be highly unusual.  Certainly, it is not common practice within the District of New Mexico to electronically alter transcript exhibits in this fashion.  The Court agrees with Plaintiffs that the exhibits are attorney-created documents consisting of an amalgamation of excerpts from each deposition, not "transcripts" in the traditional sense of that word.  Furthermore, the Court concludes that the manner in which APS has, in some instances, included the answer of a witness while leaving out the question which prompted it is improper, as it is possible that meaning of the answer could be greatly affected by the question.

Therefore, the Court concludes that Exhibits H through V attached to APS' motion should be stricken.  However, the Court will allow APS to resubmit those exhibits in the proper form–that is, by photocopying the relevant pages from the transcript (four-to-a-page format is acceptable) and highlighting the relevant passages as required under our Local Rules—provided that it does so within 30 days of the entry of this Memorandum Opinion and Order.  In addition to electronically filing the deposition exhibits, APS should also provide a highlighted courtesy copy of each exhibit to the Court.

The Court will stay its ruling on APS' motion for summary judgment [Doc. No. 153] until after it receives the exhibits in the proper format.

**III.     APS' MOTION TO STRIKE PORTIONS OF AFFIDAVITS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [Doc. No. 121]**

APS moved to strike certain exhibits filed by Plaintiffs in support of their motion for class

certification. In a Memorandum Opinion and Order entered January 7, 2009, the Court denied Plaintiffs' motion for class certification. Therefore, APS' motion to strike is now moot, and will be denied as such.

**IT IS THEREFORE ORDERED** that:

(1) APS' Motion for Summary Judgment On All Plaintiffs' Discrimination Claims [Doc. No. 151] is **GRANTED**, and Plaintiffs' claims as to discrimination against autistic students *as a group* is dismissed with prejudice;

(2) Plaintiffs' Motion to Strike Exhibits [Doc. No. 159] is **GRANTED IN PART and DENIED IN PART**, as described above;

(3) *APS' Motion to Strike Portions of Affidavits in Support of Plaintiffs' Motion for Class Certification* [Doc. No. 121] is **DENIED AS MOOT**.

_____
**UNITED STATES DISTRICT JUDGE**